# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT HUNTINGTON

**SARAH MAE MARIE BRUMFIELD,**

    **Plaintiff,**

**v.**                                  **Civil Action No. 3:18-cv-00430**

**NANCY A. BERRYHILL,**
  **ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 6) and Defendant's Brief in Support of Defendant's Decision (ECF No. 9). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## Background

Claimant, Sarah Mae Marie Brumfield, filed an application for SSI on March 3, 2011, and an application for DIB on March 7, 2011. Claimant alleged disability in both applications beginning February 24, 2011. The claims were denied initially on May 26, 2011, and upon reconsideration on September 23, 2011. Claimant filed a request for hearing on September 28, 2011. A hearing was held on September 11, 2012, in Huntington, West Virginia. An Administrative Law Judge (ALJ) presided over the hearing. The ALJ denied Claimant's applications on October 19, 2012. On December 21, 2012, Claimant requested a review of the ALJ's decision by the Appeals Council (AC).

The AC denied Claimant's request for review on December 17, 2013. Thereafter, Claimant filed this civil action before the court. This Court remanded the case back to the Defendant because "although the ALJ's ultimate credibility determination is supported by the evidence of record, her decision failed to set forth specific reasons for her credibility finding" (ECF No. 721). On June 29, 2015, Defendant assigned the matter to another ALJ to conduct a new hearing and make the disability determination. Following a hearing on January 6, 2016, the ALJ ordered consultative examinations to develop the record further. A supplemental hearing was conducted on June 6, 2017. On November 17, 2017, the ALJ denied the claims. Claimant elected not to file a request with the AC, instead, she brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2018). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such

impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920 (2018). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since February 24, 2011 (Tr. at 640). Claimant met the insured status requirements of the Social Security Act through September 30, 2019. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: osteoarthritis; degenerative disc disease of the cervical spine; lumbar strain; and COPD[1] (Tr. at 641). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or

---

[1] The ALJ found that Claimant's mental impairment of anxiety disorder is non-severe (Tr. at 641).

3

medically equaled the level of severity of any listing in Appendix 1 (Tr. at 642). The ALJ found that Claimant has the residual functional capacity (RFC) to lift/carry up to 20 pounds occasionally, 10 pounds frequently. During an eight-hour workday, she can stand and/or walk a total of six hours. She has no limitation in sitting. She can occasionally climb stairs, ladders and ropes. She can occasionally bend, stoop, crouch, crawl and kneel. Claimant must avoid concentrated exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas (Tr. at 643). The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 647). The ALJ stated that Claimant can perform light exertional work in jobs such as office helper, order caller, nongovernmental mail clerk, table worker, sorter and final assembler (Tr. at 648). On this basis, Claimant's applications were denied. (*Id.*)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether

the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on January 3, 1967 (Tr. at 663). She last completed the sixth grade (Tr. at 664). Claimant is married with three children (Tr. at 24). She does not have a driver's license (Tr. at 25).

## Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows:

On January 20, 2011, Claimant was hospitalized at St. Mary's Medical Center for pneumonia and treated with antibiotics (Tr. at 224). She reported a history of smoking one to one-and-a-half packs of cigarettes daily for 32 years (Tr. at 228). Her condition improved with medication and she was discharged on January 24, 2011 (Tr. at 224).

Claimant sought follow-up treatment with Fadi Alkhankan, M.D., on February 24, 2011 (Tr. at 275). Dr. Alkhankan observed an overinflated chest, however, Claimant had normal respiration rhythm, clear breath sounds and no wheezing, ronchi, rales or crackles (Tr. at 276). At a follow-up appointment with Heidi Wehrheim, M.D., on March 18, 2011, Claimant had increased shortness of breath when walking and climbing stairs but reported that she was exercising regularly and working part-time (Tr. at 281, 282). A recent myocardial perfusion study, treadmill stress test and echocardiogram from March 2011 were all normal (Tr. at 1050-1052). A CT scan from April 26, 2011, of

Claimant's chest showed that previously seen infiltrates had resolved (Tr. at 284-285). Claimant's lungs were clear and she had "very mild" emphysema" (Tr. at 285). It was documented that there were "no worrisome findings." (*Id.*) A pulmonary function test showed moderate pseudo-obstructive airway defect (Tr. at 286). On May 26, 2011, Dr. Alkhankan stated that Claimant's COPD was under good control and that she should continue with her current treatment (Tr. at 309). At her visit with Dr. Alkhankan on October 24, 2011, Claimant reported increased symptoms (Tr. at 398). Dr. Alkhankan prescribed Prednisone and Amoxicillin (Tr. at 404). He continued her other medications at the same dosage. (*Id.*)

On January 26, 2012, Dr. Alkhankan urged Claimant to stop smoking and ordered a bronchoscopy (Tr. at 396). The results of the bronchoscopy were within normal limits (Tr. at 375-376). On February 13, 2012, and June 13, 2012, Dr. Alkhankan heard rhonchi on examination, but Claimant's chest examination was otherwise normal (Tr. at 346, 359). Once again, Dr. Alkhankan recommend smoking cessation, but Claimant "[w]as not interested in smoking cessation at this time" (Tr. at 348, 360). An overnight pulse oximetry test performed on February 21, 2012, showed oxygen desaturation and Dr. Alkhankan prescribed supplemental oxygen for use at night (Tr. at 348, 354-355). On September 27, 2012, a six-minute walk test showed an oxygen saturation of 98% (Tr. at 938). On October 11, 2012, the examination of Claimant's upper airway and lungs were normal (Tr. at 1088-1089). Claimant remained uninterested in quitting smoking (Tr. at 1090). A nuclear myocardial perfusion scan performed on February 6, 2013, appeared normal and an exercise stress test was negative and showed "good functional capacity" (Tr. at 921).

Claimant returned to Dr. Alkhankan on January 9, 2014 (Tr. at 1078). She had

not been using her inhalers or oxygen for the past two months because she lost her insurance. (*Id.*) Claimant's oxygen saturation was 99% and the examination of her upper airway and lungs was normal, despite being without medication (Tr. at 1081-1082). A CT scan of Claimant's chest showed no evidence of parenchymal lung disease (Tr. at 1083). Dr. Alkhankan described Claimant's COPD as well controlled but ordered an updated pulmonary function test as her last test was from 2011 (Tr. at 1084). The test was performed on May 2, 2014, and revealed mild obstructive airway defect with hyperinflation of the lungs (Tr. at 1076).

On October 2, 2014, Claimant returned to Dr. Alkhankan for refills of her inhalers and stated that "she feel[s] well with inhalers and wants to continue [to] use them" (Tr. at 1070). Claimant was not using oxygen at home (Tr. at 1070). Her upper airways and lungs were again normal on examination and Dr. Alkhankan described Claimant's COPD as "well control[ed]" (Tr. at 1074). He noted that she did not require home oxygen. (*Id.*)

On March 11, 2017, Claimant presented to St. Mary's Medical Center complaining of a one-day history of elbow pain that radiated into her arms (Tr. at 1133). She explained that she is a caterer, which requires heavy lifting. (*Id.*) Her physical examination was normal (Tr. at 1135).

## Medical Opinions

In May 2011, state agency physician Narendra Parikshak, M.D., reviewed the available evidence of record and opined that Claimant could perform medium work despite her impairments (Tr. at 292-299). Fulvio Franyutti, M.D., concurred with Dr. Parikshak's opinion in August 2011 (Tr. at 311).

On March 15, 2016, Steven Nutter, M.D., saw Claimant for a physical consultative examination (Tr. at 1094). Dr. Nutter noted that Claimant walked with a normal gait

7

and appeared comfortable in a sitting or standing position (Tr. at 1096). Although pulmonary studies showed mild COPD, Dr. Nutter found Claimant's pulmonary examination to be normal and noted that neither mild exertion nor lying down caused shortness of breath (Tr. at 1098). Dr. Nutter observed that Claimant had some pain and decreased range of motion of the cervical and lumbar spine and tenderness of the lower thoracic and lumbar spine. (*Id.*) He found no evidence of radiculopathy and straight leg raise and sensory testing were negative. (*Id.*) Dr. Nutter found some crepitus in Claimant's right shoulder (Tr. at 1099). Claimant also had pain and tenderness in the hands and tenderness in the left wrist and ankle. (*Id.*) Dr. Nutter observed Herbrden's nodes in Claimant's hands which is consistent with osteoarthritis. (*Id.*) Claimant had a positive Tinel's test on the right wrist suggestive of carpal tunnel syndrome. (*Id.*) Despite these findings, Claimant had full grip strength bilaterally, could write with her dominate hand, and could pick up coins with either hand without difficulty (Tr. at 1097). A pulmonary function test on March 15, 2016, revealed "mild" COPD (Tr. at 1102).

In April 2016, the ALJ sent Subramaniam Krishnamurthi, M.D., Claimant's medical records and interrogatories seeking his professional opinion (Tr. at 1104-1107). Dr. Krishnamurthi opined that Claimant had COPD, but it did not prevent her from performing a reduced range of light work (Tr. at 1109, 1111).

<u>Psychological Opinions</u>

On September 12, 2011, Claimant attended a psychological consultative examination with Emily Wilson, M.A. (Tr. at 312). Claimant reported that she continued to work part-time as a caterer and that a typical day included straightening up her house, doing laundry, working (if it was a workday) and perhaps grocery shopping (Tr. at 312, 314). On examination, Claimant displayed appropriate mood, normal thought content

8

and process, normal memory, normal pace and above average concentration (Tr. at 315). Ms. Wilson diagnosed an anxiety disorder "based on [Claimant's] reported systems and history." (*Id.*) After reviewing Ms. Wilson's findings, Karl G. Hursey, Ph. D., a state agency psychologist, opined that Claimant did not have a severe mental impairment (Tr. at 318, 328, 330).

On June 6, 2016, Claimant attended another consultative psychological examination, this time with Cherie Ziegler, M.A. (Tr. at 1112). Claimant reported that she still straightened up the house but due to difficulty breathing, it took her longer (Tr. at 1114). She also babysat her granddaughter and visited her son, who was incarcerated. (*Id.*) Although Claimant's recent memory was deficient as she could only recall 2 out of 4 items after a 5-minuite period, her immediate and remote memory, concentration, persistence, and pace were all normal. (*Id.*) Ms. Ziegler diagnosed an unspecified anxiety disorder based on Claimant's prior diagnosis and anxious mood (Tr. at 1115).

On July 6, 2016, the ALJ sent Richard Gross, Ph.D., Claimant's medical records and interrogatories seeking his professional opinion (Tr. at 1117-1123). Dr. Gross opined that Claimant's anxiety disorder caused no more than a mild limitation in social functioning and no limitation in concentration, persistence or pace (Tr. at 1126). He also found a mild restriction in activities of daily living based only on Claimant's COPD. (*Id.*) Dr. Gross opined that Claimant could understand, remember and carry out at least simple instructions and directions and that she has shown that she can adequately maintain attention and concentration in a work setting (Tr. at 1129). He also concluded that Claimant did not demonstrate significant social interaction problems and could appropriately interact with a coworker or supervisor as she has been doing in her current employment. (*Id.*) Finally, Dr. Gross found no evidence of significant problems

9

adapting to the usual stress of routine work. (*Id.*)

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the decision is not supported by substantial evidence because the ALJ failed to properly evaluate Claimant's credibility (ECF No. 6). Claimant avers that the ALJ "merely recited the contents of the medical records from Claimant's treating sources and failed [to] articulate in a meaningful manner why Claimant's complaints are not worthy of more weight." (*Id.*) Claimant asserts that the ALJ relied heavily on the opinion of a non-treating State agency medical expert instead of Claimant's "subjective symptoms." In response, Defendant asserts that substantial evidence supports the ALJ's symptom evaluation (ECF No. 9). Defendant avers that Claimant's "own description of her limitations is not enough to establish disability and she has not identified any evidence or functional limitation the ALJ failed to consider." (*Id.*)

### Discussion

The controlling regulations describe a two-prong process for evaluating symptoms. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling (SSR) 16-3p, 2016 WL 119029. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, including pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2016 WL 119029, at *3. Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms (such as pain) and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 119029, at *4.

To evaluate the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence of record. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, 2016 WL 119029, at *4. The ALJ also considers the factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929 (c)(3)(i)-(vii). *Id.*[2] "If an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . ." *Id.*

The ALJ followed this two-step analysis. At step one, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. at 645). Thus, the ALJ proceeded to step two and determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (*Id.*)

Claimant argues that the ALJ failed to explain the credibility assessment (ECF No. 6). There is no requirement that [the ALJ] state specific findings as to each factor. *Wolfe v. Colvin*, No. 3:14-CV-4, 2015 WL 401013, at *4 (N.D.W. Va. Jan. 28, 2015). In this case,

---

[2] Factors relevant to evaluating a claimant's symptoms include (1) daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment other than medication to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 16-3p, 2016 WL 119029, at *7. The ALJ is not required to discuss a factor if there is no information or evidence related to that factor. SSR 16-3p, 2016 WL 119029, at *7.

the ALJ explained the basis for his finding that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record as follows:

> With respect to the claimant's COPD, pulmonary function testing showed no more than moderate obstruction. She routinely reported that medication helped her symptoms. Her pulmonologist described her COPD as well controlled with medication. The claimant used supplemental oxygen briefly in 2012, but her pulmonologist noted in 2014 that she did not qualify for home oxygen based on her overnight pulse oximetry. The record reflects no pulmonology treatment from October 11, 2012 until January 9, 2014, and none since October 2, 2014. The claimant testified that she had not had medical insurance continuously since her alleged onset date. However, the record reflects no ER treatment for COPD exacerbations during these periods. Despite her purportedly disabling respiratory symptoms as well as her doctor's repeated recommendations to quit smoking (e.g. Exhibits 2F-4F, 7F, 16F, 21F), the claimant testified that she continues to smoke 1-1½ packs of cigarettes per day.
>
> The claimant has received very little treatment for back or neck pain. She was given an exercise sheet for "backache" in March 2011, but no other treatment was recommended (Exhibit 3F/4). She did not seek treatment for neck pain until December 2012 following a motor vehicle accident. The record reflects no further treatment or testing following a May 2013 cervical spine MRI, which showed only mild to moderate findings. Other than right shoulder crepitus and Hebreden's nodes in the hands, physical exam by the consultative examiner was objectively normal (Exhibit 22F).
>
> The claimant's daily activities are also inconsistent with disabling conditions or symptoms. She testified that since her alleged onset date, she has worked 15-20 hours a week, 2-3 days a week for about 6 hours a day.  She also reported the following daily activities: attending to her personal hygiene, light household cleaning, cooking, doing laundry, shopping for groceries, visiting her daughter, babysitting her grandchildren occasionally, and visiting her son in prison (Exhibits 10F, 21F, 25F).

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c) and 416.929.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See, Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Defendant asserts that under the regulations, the ALJ cannot find a claimant disabled based solely on subjective complaints. 20 C.F.R. §§ 404.1528, 404.1529, 416.938, 416.929. Allegations of pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929. Defendant asserts that Claimant's subjective complaints are not enough to demonstrate her alleged symptoms.

The regulations on assessing credibility state that "We will consider all of the evidence presented, including information about your work record, your statements

13

about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons." 20 C.F.R. §§ 404.1529(c)(3) and 416.929.  When an ALJ evaluates a claimant's RFC, a medical assessment of the claimant's remaining capabilities to work, he considers all of the relevant medical and other evidence. See  20 C.F.R. § 404.1513; SSR 96-8p.  In cases in which symptoms, such as pain, are alleged, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations.  Additionally, the RFC assessment must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.  Richard C. Ruskell, *Social Security Disability Claims Handbook* (2015 Edition), 214 n.5.

In this case, the ALJ stated that he gave "more weight to the objective details and chronology of the record, which more accurately describe the claimant's impairments and limitations" (Tr. at 647).  The ALJ found that the "residual functional capacity assessment is supported by the overall record, particularly the objective medical findings, the opinions of the non-examining psychologist and medical experts and the claimant's treatment history." (*Id.*)

## Conclusion

Accordingly, the undersigned respectfully recommends that the District Judge find that the ALJ's decision is supported by substantial evidence. For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 6), **GRANT** the Defendant's Brief in Support of Defendant's Decision (ECF No. 9), **AFFIRM**

the final decision of the Commissioner and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: October 19, 2018

Dwane L. Tinsley
United States Magistrate Judge